**UNITED STATES of America**

v.

**Kevin M. REPPERT.**

**Criminal No. 3:97–241(DJS).**

United States District Court,
D. Connecticut.

March 31, 1999.

Kari A. Pederson, Assistant United States Attorney, District of Connecticut (John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT), for United States.

Gary D. Weinberger, Assistant Federal Public Defender, Hartford, CT (Thomas G.

Dennis, Federal Defenders Office, Hartford, CT), for defendant.

## MEMORANDUM OF OPINION

SQUATRITO, District Judge.

The defendant is charged with receiving and possessing child pornography in violation of 18 U.S.C. § 2252. Pending before the court is the defendant's motion to suppress tangible property on the ground that its seizure was in violation of military law, the Fourth Amendment to the United States Constitution, and Federal Rule of Criminal Procedure 41. For the reasons that follow, the motion to suppress will be denied.

### I

The following facts are undisputed. On May 24, 1996, Special Agent Patricia Hurley of the Naval Criminal Investigative Service received information from Walter Dwayne Reed that he had accidentally come across images on the computer of his roommate, the defendant, which depicted minors engaged in sexually explicit conduct. Both the defendant and Mr. Reed are members of the United States Navy. The apartment in which they resided, 28G Flintlock Road in Ledyard, Connecticut, was leased by the Electric Boat Corporation on behalf of the United States Government for the benefit of United States Navy personnel.

■ Upon receipt of this information, Agent Hurley requested an authorization to search the defendant's apartment and seize the computer on which the images in question were displayed from Captain Randall Dills Preston, Commander of the PCU Wyoming. In support of her application, Agent Hurley submitted an affidavit to which she attached Mr. Reed's statement. Agent Hurley's affidavit states that the purpose of the requested authorization was "ARTICLE 134 OF THE UCMJ [Uniform Code of Military Justice]," also

known as 10 U.S.C. § 934. This section criminalizes, for purposes of general court-martials, "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of nature to bring discredit upon the armed forces, and crimes and offenses not capital...." 10 U.S.C. § 934. The possession of child pornography is a violation of § 934. *See United States v. Maxwell*, 45 M.J. 406, 410 (C.A.A.F.1996).

Captain Preston signed the authorization to search on May 24, 1996. That same day, the search was executed and the computer seized. The defendant was not at home at the time of the search.

On July 8, 1996, the defendant gave a written consent to search the contents of the computer. The search revealed approximately one hundred images of what appear to be children engaged in sexually explicit acts.[1] On December 6, 1997—approximately one and one half years after the evidence was seized—the defendant was indicted in federal court on the aforementioned charges.

### II

The defendant makes three arguments in support of suppressing the evidence obtained in the July 8, 1996 search of his home: (1) the search was unauthorized under military law because Military Rule of Evidence 315 does not permit the search of a serviceman's off-base residence; (2) the search was in violation of the Fourth Amendment because Captain Preston was not a neutral magistrate; and (3) the search failed to comply with Federal Rule of Criminal Procedure 41.

### A

■ The defendant first argues that the search of his apartment was unlawful under Military Rule of Evidence 315 since that rule does not grant a commander the

---

1. The defendant does not challenge the search of his computer directly, but rather alleges that the evidence should be suppressed based on the "fruit of the poisonous tree" doctrine.

right to authorize a search of an off-base residence. Rule 315 states:

(a) General Rule. Evidence obtained from searches requiring probable cause conducted in accordance with this rule is admissible at trial [*i.e.*, a court-martial] when relevant and not otherwise inadmissible under these rules.

(b) Definitions. As used in this rule:

(1) Authorization to search. An "authorization to search" is an express permission, written or oral, issued by a competent military authority to search a person or an area for specified property or evidence, or person. It may contain an order directing subordinate personnel to conduct a search in a specified manner.

(2) Search Warrant. A "search warrant" is an express permission to search and seize issued by a competent civilian authority.

(c) Scope of Authorization. A search authorization may be issued under this rule for search of:

(1) Persons. The person of anyone subject to military law or the law of war wherever found;

(2) Military property. Military property of the United States or of a nonappropriated fund activity of an armed force of the United States wherever located;

(3) Persons and property within military control. Persons or property situated on or in a military installation, encampment, vessel, aircraft, vehicle or any other location under military control, wherever located: or

\* \* \* \* \* \*

(d) Power to authorize. Authorization to search pursuant to this rule may be granted by an impartial individual in the following categories:

(1) Commander. A commanding officer, officer in charge or other person in a position ... analogous to an officer in charge or a position of command, who has control over the place where the property of person to be searched is situated or found, or if that place is not under military control, having control over persons subject to military law or the law of war.

The defendant's only claim of a Rule 315 violation is that this rule does not grant a commander the right to authorize the search of an off-base residence. He appears to concede that there was probable cause to search and that Captain Preston was a "competent military authority."

The lease in question states:

In recognition of (1) the U.S. Navy's need to ensure security, military fitness, and good order and discipline and (2) the U.S. Navy's policy of conducting regularly scheduled periodic inspections, the Landlord agrees that while its facilities are occupied by ship's force, the U.S. Navy and not Tenant has control over the leased premises and shall have the right to conduct command inspections of those premises.

Based on the lease, the defendant's apartment was "property under military control." Rule 315(c)(3). Therefore, the search was permissible under military law. *See Donnelly v. United States*, 525 F.Supp. 1230, 1231 (E.D.Va.1981).

## B

██ The defendant implicitly attacks the Constitutionality of Rule 315 in arguing that Captain Preston was not a "neutral magistrate," and, by implication, unable to grant a search warrant. Therefore, he argues, the evidence must be suppressed as the fruit of a "warrantless" search. *See Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (suppression is the appropriate remedy for evidence seized pursuant to a "warrant" issued by a magistrate who is not neutral and detached). The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their personal houses, papers, and ef-

fects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

 The defendant misconstrues the applicability of the Fourth Amendment to military authorizations to search. First, the Warrant Clause does not apply to all searches. *See, e.g., New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (administrative inspections); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk). An authorization to search is another such search: it is "independent of the Warrant Clause of the Fourth Amendment." *United States v. Stuckey,* 10 M.J. 347, 361 (C.M.A.1981). Although analogous to a warrant, it is not, strictly speaking, a warrant and a commander is not a "magistrate." *See United States v. Chapman,* 954 F.2d 1352, 1369 (7th Cir.1992) (citing *Stuckey,* 10 M.J. at 360). Nonetheless, the Fourth Amendment applies to military searches, and such searches must be "reasonable." *United States v. Stringer,* 37 M.J. 120, 125 (C.M.A.1993) (citations omitted); *see also Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (Reasonableness is "[t]he ultimate standard set forth in the Fourth Amendment"). Thus, if a search is not reasonable, then evidence seized pursuant thereto is not admissible in either a civilian or military proceeding. *See United States v. Grisby,* 335 F.2d 652, 655–56 (4th Cir. 1964).

 This court knows of no cases holding military authorizations to search unconstitutional. Indeed, it is settled law that a military commander is sufficiently neutral and detached for the purposes of authorizing the search of persons and property under his control. *See United*

*States v. Banks,* 539 F.2d 14 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *Wallis v. O'Kier,* 491 F.2d 1323 (10th Cir.), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974). Since there is no evidence that the search was not supported by probable cause, or that Captain Preston was so involved in the investigation of the alleged wrongdoing that his neutrality or detachment was compromised, the search complied with the Fourth Amendment.

### C

 Finally, the defendant argues that even if the search complied with military law, Agent Hurley, as a federal law enforcement officer, was required to seek a search warrant in compliance with Federal Rule of Criminal Procedure 41. Rule 41 states that "[u]pon the request of a federal law enforcement officer or attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district for a search of property...."[2] Fed.R.Crim.P. 41(a). Since Captain Preston is not a "federal magistrate judge," *United States v. Moreno,* 23 M.J. 622, 624 (A.F.C.M.R. 1986), *review denied,* 24 M.J. 348 (C.M.A. 1987), his authorization to search is not a Rule 41 warrant. It follows, according to the defendant, that Agent Hurley's failure to carry out the search in accordance with Rule 41 requires suppression of any evidence used in this court.

This court finds nothing in Rule 41 or the case law to mandate such a holding. If the search was valid under military law, then it is admissible in this court. The facts of this case are similar to those in *United States v. Grisby,* 335 F.2d 652 (4th Cir.1964). There, evidence was seized in the defendant's living quarters pursuant to a verbal order of the Marine Chief of Staff. The defendant was indicted in federal

---

**2.** The defendant's argument that 28 C.F.R. §§ 60.2(h) and 60.3 require a Naval Criminal Investigative Service agent to seek a Rule 41 warrant is without merit. This regulation states only that such a person *may* seek a Rule 41 warrant.

court. The defendant moved to suppress, apparently conceding that the search complied with military law, but arguing that the evidence should have been held inadmissible in a civilian criminal prosecution because it was warrantless. The court denied the motion to suppress, and the defendant was convicted. The Court of Appeals upheld the conviction:

> [The defendant] seems to contend, however, that even though ,the search was valid as a matter of military law, it cannot be recognized by a district court as being valid. He seems to say that had he been tried and convicted by a Court Martial he would have had no basis for a contest over the admission in evidence against him of the property seized in his quarters, but that a District Court can recognize as valid only a search, the legality of which is founded in civilian law. We find no basis for such a distinction. Grisby was subject to military law at the time of the search. If the search was valid as a matter of military law when made, it was valid for all purposes, and admission of the fruits of the search ought not be dependent upon the jurisdiction in which the subsequent trial is had.

*Grisby*, 335 F.2d at 655–656.

The defendant points to *United States v. Burke*, 517 F.2d 377 (2d Cir.1975), as support for his position. That case concerned the admissibility of evidence seized in the execution of a warrant issued by a state judge that, although constitutionally valid, did not comply with three technical requirements of Rule 41(c). The only crime alleged in the application and supporting affidavit was a federal firearms crime. In addition, federal agents were involved in the investigation. The defendant argued that because the investigation was, in essence, federal, the failure to comply with Rule 41 mandated suppression. The court upheld the admissibility of the evidence, stating:

> Without assuming to make a definitive formulation, we think that except in a

case like *Navarro* [v. U.S., 400 F.2d 315 (5th Cir.1968)] where ... the defect made what was done in effect an unconstitutional warrantless search, violation of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Burke*, 517 F.2d at 386–87 (footnotes omitted). *Burke* does not come directly into play in the instant matter because it does not preclude the admissibility of evidence seized pursuant to an authorization to search. Moreover, nothing in *Burke* suggests that only evidence seized pursuant to a search warrant issued pursuant to Rule 41 is admissible in federal court. *See also* Rule 41(h) ("This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made").

Nonetheless, a factor not directly discussed in *Grisby* and *Burke* is relevant here, *viz*, whether the Government's investigation of the defendant was an independent investigation by the Naval Criminal Investigative Service. If the defendant could show that the investigation of his alleged wrongdoing was in fact an investigation by the United States Attorney's Office—thus making Agent Hurley that Office's "agent"—suppression might be mandated for failure to seek a warrant in accordance with Rule 41. *See United States v. Baker*, 33 C.M.R. 609, 614, 1963 WL 4926 (N.B.R.1963). *But see United States v. Brown*, 784 F.2d 1033, 1036–37 (10th Cir.1986) (military police need not seek a Rule 41 warrant to seize evidence of a crime on a military base even though victim and suspects are civilians, and civilian law enforcement is involved in investigation). However, this is not the case here. Agent Hurley's application refers only to a violation of military law, not the

child pornography statute for which the defendant is under indictment. Indeed, the defendant concedes in his memorandum of law that this case began as a military court-martial and, only later, did the United States Attorney's Office decide to prosecute the case in this court. Therefore, *Burke* does not mandate suppression.

## III

For the reasons set forth above, the defendant's motion to suppress (**doc # 7**) is **DENIED.**

It is so ordered.